Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY BEANE,
          Plaintiff,

    vs.

RPW LEGAL SERVICES, PLLC,
AND ROBERT P. WILLIAMSON,
          Defendants.

No. **2:18-cv-00704-RAJ**

DEFENDANT'S MOTION FOR
DISMISSAL
LACK OF STANDING & JURISDICTION

Noted for consideration: April 5, 2019

The Defendants hereby present this Motion for Dismissal, pursuant to 12(b)(6).

Alternatively, Defendants moves for a more definite statement under Rule 12(e).

## I.   INTRODUCTION

1.1    <u>Case Background</u>.   Defendant attorney was hired by a homeowners' association to obtain

a state court Judgment award against a homeowner, plaintiff Beane, for un-paid annual

homeowner dues.  This was accomplished within a 6-month period during 2017.

1.2    <u>FDCPA Claim</u>.   This action is not concerned about the underlying Judgment against

Beane.  Here, there is no suggestion of any sort of fraud, deceit or unprofessional conduct on the

part of HOA's attorney's conduct.   Rather, Beane is claiming that Defendant Williamson, who

was assisting his client to enforce its creditor's claim, committed 4 technical process errors in the

process. Ms. Beane has filed her federal claim under the Fair Debt Collection Practices Act. The

Defendants' Motion for Dismissal - 1

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

FDCPA establishes several rules that debt collectors must follow, in order to avoid certain harms to consumers. The FDCPA, like some other consumer protection statutes, contains a provision for imposition of additional 'statutory damages' up to $1,000 from the non-compliant debt collector for violations of the process rules. 15 U.S.C. §1692k(a). Beane's purpose for bringing this lawsuit is collect a wind-fall award of attorney's fees based solely upon the alleged process errors. But, there is a fatal flaw in this case – Beane cannot show that she suffered any actual damages due to the process errors, and without any actual damages she fails to demonstrate that she has standing to bring this action.

1.3   No Standing – No Jurisdiction.   The federal standing rules, as they concern the need for plaintiffs to articulate actual damages, have become much refined over just the last few years. The battleground involves actions brought under various consumer protection statutes – like the FDCPA – because they often contain so-called wind-fall statutory damages provisions. Early cases enabled a consumer plaintiff to collect large attorney fee awards based solely upon allegations of violations of technical process rules.

Now, however, recent federal cases – many from the 9th circuit – have established that as an essential prerequisite to bringing such actions, the consumer must first allege and articulate that she suffered actual damages (like additional unnecessary emotional distress) as a result of the alleged process violations.

In this case, Defendant Williamson had, preemptively from day one, provided full Validation of Debt information to Beane before the alleged process errors occurred. Nonetheless, Beane alleges that she suffered "injuries to her feelings, personal humiliation, embarrassment, mental anguish and severe emotional distress" (Complaint §13) due to the alleged process errors; injuries not to be confused with the anxiety that arises naturally from

Defendants' Motion for Dismissal - 2

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

being the target of a collection action. Beane's allegations end there. Her Complaint does not

plead that she experienced any concrete and particularized injury in fact, as required by federal

case law, and so, her Complaint must be dismissed.

## II.   ISSUES

Should this Court dismiss this lawsuit with prejudice, pursuant to Rule 12(b)(6), because

Beane has not pled a concrete, particularized injury in fact, and thus lacks standing?

In the alternative, should this Court order Beane to provide a more definite statement

pursuant to Rule 12(e) because she has pled no harm beyond the conclusory statement that she

suffered distress as a result of the process errors?

## III.  STANDING & JURISDICTION

3.1    Standing Generally.    Article III of the U.S. Constitution extends the "Judicial Power"

only to concrete "Cases and Controversies." U.S. Const. art. III, § 2.  One telltale sign of a

cognizable dispute suitable for resolution by the federal courts is that the plaintiff must have

standing to bring it. The "irreducible constitutional minimum" for standing requires the plaintiff

to show, in advance, that the 3 prerequisite elements of standing are present.  The plaintiff must

plead and demonstrate that (1) she has suffered a particular and concrete actual injury, (2) there

must be a causal connection between the conduct complained of and her injury, and (3) that the

injury suffered will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife,* 504 U.S.

555 (1992).  The burden of establishing the elements of standing rests on the plaintiff. *Spokeo,*

*Inc. v. Robins*, 136 S. Ct. 1540 (2016).

The "First and foremost" element for standing, the need to show an injury in fact, itself

consists of two elements: (a) the injury must be concrete and particularized; and (b) the injury

---

Defendants' Motion for Dismissal - 3

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.   #205
Mill Creek, WA  98012-1294
(425) 743-0728

must be actual or imminent, not conjectural or hypothetical. *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018), citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

3.2    Standing in Consumer law cases.  In some early cases, decided prior to 2016, courts in various circuits reasoned that claims based upon violations of consumer law process rules were exempt from the actual injury standing requirements, as if the congress intended to elevate certain violations – of 'statutory rights' - into being inherently injurious actions – automatically. But it is not that simple, as the Supreme Court established recently established in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016).

Spokeo clarified the limits of plaintiffs' Article III standing in Federal Courts. *Spokeo* made clear that consumer plaintiffs whose statutory rights have been violated (based upon process errors), but who have not suffered any real harm or a risk of real harm, do not have Article III standing. Id. at 1543.  In *Spokeo*, the Court emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation", *Id*.at 1549.  Now, at the pleading stage, this means that a plaintiff must "clearly ... allege facts demonstrating" each element for each claim she seeks to press. Id. at 1547.   Since these elements are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation, *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).  Mere conclusory statements of injury in a complaint will not do.

Following *Spokeo*, federal cases in various circuits have uniformly affirmed and clarified the proposition that an alleged simple process error is not sufficient to confer standing. FCRA/FACTA cases: *Bassett v. ABM Parking Services*, 883 F.3d 776 (9th Cir. 2018), *Hagy v.*

Defendants' Motion for Dismissal - 4

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.   #205
Mill Creek, WA  98012-1294
(425) 743-0728

*Demers & Adams*, 882 F.3d 616 (6th Cir. 2018), *Meyers v. Nicolet Restaurant*, 843 F.3d 724 (7th Cir. 2018);  FDCPA cases: *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017) and *Strubel v. Comenity Bank*, 842 F.3d 181 (2nd Cir. 2016), and *Crupar-Weinmann v. Paris Baguette America, Inc.,* 861 F.3d 76 (2nd Cir 2017).  In *Hagy*, another FDCPA process error case, the court said: "We know of no circuit court decision since *Spokeo* that endorsed an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury."  *Hagy*, at 622.  In all of these cases, the debt collectors each did some prohibited act, but because no actual harm was alleged with particularity, and/or even possible, the cases were dismissed.  These cases begin with an assessment of the particular sort of harm that each rule was fashioned to avoid.

In *Bassett*, the 9th Circuit noted that the case circumstances established that the particular harm to be avoided by the subject statutory rule [a requirement to truncate card numbers on receipts] that had been violated could not possibly occur [plaintiff only received the receipt, so it could not be seen by wrongdoers].  If the particular harm that Congress sought to avoid, in a particular case, due to circumstances of that case, cannot demonstrably be caused by the process error, then the underlying process error, by itself, does not confer standing.  The 9th Circuit recently doubled-down on this reasoning in another FRCA/FACTA case, *Nobel v. Nevada Checker Cab,* 726 Fed.Appx. 481 (9th Cir. 2018) – case dismissed because plaintiff alleged no facts to show actual injury or causation.

It is likely that exceptions to the general *Spokeo* rule will be recognized.  Some consumer rules are aimed at avoiding egregious conduct like fraud or outright deception, and in cases involving that sort of behavior the Courts may enable a lower threshold for allegations of harm or risk of harm.  In some cases, the process error might be of such a nature to hinder or frustrate the purpose of the statutory rule in question, and in such a case, an exception could be fashioned. For

Defendants' Motion for Dismissal - 5

example, in *Macy v. G.C. Services LP*, 897 F.3d 747 (6th Cir. 2018) the Court carved out an exception to the general rule, because, in that case, one was necessary to vindicate the purpose of the FDCPA's technical Validation of Debt provisions.   In *Macy*, the collection agency had not provided any preemptive debt validation information to the consumer, and the consumer was not yet able to 'validate' that the claim was not bogus or a case of mistaken identity.   The collector provided a *Notice of Debt* form to inform the consumer of her right to request validation information if she wanted any (a good thing), but the notice contained an inadequate description of just how the consumer should send a proper reply 'dispute' message to request the information, i.e. a message in writing.   Under those circumstances, the purpose of the Validation of Debt rule was potentially frustrated, creating a potential procedural risk of later harm to the consumer, and so the Court allowed the case to proceed without detailed allegations of actual harm and causation.   Note: in this present case, the Defendant did provide preemptive Validation of Debt information, so there is no risk of frustration of the consumer's right to get such information, and exceptional circumstances do not exist.

In this case, to satisfy the injury in fact requirement, Beane must point to some harm other than the fact of "a bare procedural violation." *Spokeo*, 136 S. Ct. at 1550.   Not all procedural violations, not even all inaccuracies, cause real harm.

## IV.   FDCPA - Generally

4.1   FDCPA Purposes.   The Fair Debt Collection Practices Act, 15 U.S.C. §1692, protects consumers from abusive debt collection practices, in three ways; (1) it seeks to dispel mistaken identity contacts by requiring creditor identification (Validation of Debt) and collector identification (mini-miranda statement), (2) it prevents harassing practices, and (3) it prevents

---

Defendants' Motion for Dismissal - 6

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.   #205
Mill Creek, WA  98012-1294
(425) 743-0728

deceptive statements by collection agencies.  This case involves principally the first concern;

namely, to ensure that the collector provide Validation of Debt information to the consumer.

4.2    <u>Validation of Debt Concept</u>.   Purpose of Validation of Debt provisions. The purpose of

the Validation of Debt provisions, at §1692(g), is to ensure that the consumer is apprised of the

circumstances of the debt and the basis of the creditor's claim, to be able to 'validate' that the

claim is not bogus or a case of mistaken identity.   The consumer should be able to identify the

particular claim that the debt collector is talking about; so that the consumer is able to realize "I

see, this collector is writing about my debt that I incurred with [creditor] on [date] for

[transaction X, or account X]."  Usually, the consumer can readily connect the collector with the

underlying claim.  However, it can cause a lot of needless anxiety to receive a contact from a

debt collector when the consumer is confused and cannot readily identify who the creditor is or

what the basis of the claim is.  To avoid such unnecessarily distressful situations, the Validation

of Debt provisions were conceived to give the consumer a new right; the right to receive

validating information if they have any confusion.  The Validation of Debt provisions seek to

prevent situations where a consumer is being approached by a debt collector to collect on a bogus

or erroneous claim; they require the delivery of certain notices and information upon request.

What is a Validation of Debt information?  The FDCPA does not define what constitutes

proper debt validation information.  In the leading case of *Chaudhry v. Gallerizzo*, 174 F.3d 394

(4th Cir. 1999), the Court adopted this standard: "Validation of a debt involves nothing more than

the debt collector confirming in writing that the amount being demanded is what the creditor is

claiming is owed."   As long as the information provided is sufficient to enable the consumer to

'validate' that the claim is not bogus or a case of mistaken identity, then the purpose of

Validation of Debt requirements has been fulfilled.  In 2006, the 9th Circuit followed and adopted

Defendants' Motion for Dismissal - 7

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

what it described as "the reasonable standard" articulated in *Chaudhry*, see *Clark v. Capital Credit*, 460 F.3d 394 (9th Cir. 2006).  The best possible way to provide more than sufficient information is to provide an itemized accounting spreadsheet showing all dates, charges and explanations.  Note: 'Validation of the Debt', or debt verification, does not mean that the creditor's claim is sufficiently proved or necessarily meritorious.  The consumer may still disagree with the creditor's claim and defend against it however she chooses, but as soon as the consumer can see that a creditor, her creditor, is pursuing a grounded claim, then the FDCPA objectives are satisfied.

Only 1 Validation Necessary.  It is self-evident that once sufficient Validation of Debt information is provided to the consumer, at whatever time and in whatever form it is provided, the FDCPA claim clarification objectives are satisfied.  Consumers have no proper interest in demanding receipt of multiple informational packages from the debt collector, and the FDCPA does not require multiple redundant validations.

Preemptive Validation.  Oftentimes a debt collector will provide full Validation of Debt information in advance of or with its initial contact with the consumer in order to preemptively satisfy these FDCPA requirements.  In such cases, it would be impossible for the consumer to experience any unnecessary distress, or actual injury, as a result of the debt collector's actions, or later inactions, to provide Validation of Debt information.  Of course, the consumer will usually experience some distress due to the fear of the collection efforts and outcome - stress is inherent in being a debtor, but this is not a 'harm' that the FDCPA seeks to avoid.

No automatic Standing.  The FDCPA does not contain any statements to the effect that violations of the Act's various debt validation rules are inherently harmful.  Congress has not attempted to elevate technical process errors, like those alleged here, to any automatic injurious

Defendants' Motion for Dismissal - 8

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

status.  On the contrary, Congress has recognized that some rule violations have given rise to

unintended 'abusive lawsuits' – where the plaintiff seeks to penalize what seems to be harmless

conduct.   Each rule has an important purpose, but where a violation does not frustrate the

purpose in question, and the collector's conduct does not cause the harm to be avoided, there is

no good argument for relaxing the Article III standing requirements.  Here, there is no basis for

not applying the post-*Spokeo* general rule case law.

4.3    Mini-Miranda Concept.    The FDCPA also requires third-party collectors to provide,

upon their first contact with the consumer, a so-called 'mini-miranda' statement to (1) identify

the third-party as a collector, (2) to disclose that the third-party's purpose is to collect money

from the consumer, and (3) apprise the consumer that the context is an adversarial one so the

consumer should be on-guard before providing any information.  The purpose for this

requirement, at §1692(e)(11), is to dispel any confusion the consumer may have about the

purpose of the contact and to avoid trickery by collectors.  The harm that this rule seeks to avoid

is the situation where the consumer does not appreciate the adversarial nature of the contact and

that she might be in jeopardy of giving information that might not be in her best-interest.

No automatic standing.  The FDCPA's procedural rules, like the mini-miranda rule, are

not the sort of rules that should be given special importance or protection.  The court in *Hagy*

said: "Nowhere in the FDCPA (or for that matter the legislative record) does Congress explain

why the absence of such a warning [the mini-miranda warning] always creates an Article III

injury." *Hagy*, at 622.

## V.  STATEMENT OF FACTS

5.1    Background Facts.   Nature of Williamson's Practice.  Defendant Williamson is a sole

practitioner attorney whose practice has been focused on real estate and estate planning matters.

Defendants' Motion for Dismissal - 9

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.   #205
Mill Creek, WA  98012-1294
(425) 743-0728

He occasionally advises homeowners' associations on administrative matters. Over the last 15 years, the incidence of his debt collection services has been less than 1% of all services.

Underlying Lawsuit. A client, Marysville Estates, asked Williamson to commence a lawsuit against a homeowner who was seriously delinquent in paying her annual homeowner's dues assessments. The case was resolved within 6 months, by obtaining a Summary Judgment Order against Beane.

Preemptive Validation. Williamson's initial contact with Beane was made by delivery of the collection Complaint to her. The Complaint provided full Validation of Debt information, as that term is used in the FDCPA; it provided full detail about the nature and extent of the HOA's claims. This information was provided in advance, and it preempted any later need she might have had to request such information (if she was really confused).

Compliance with FDCPA rules. Beane early-on reminded Williamson that the FDCPA could arguably apply to the processing of the collection lawsuit. Thereafter, Williamson took care to attach mini-miranda statements on all correspondences, out of an abundance of caution and to be in compliance in case Beane could prove that FDCPA did apply.

Subsequent Provisions of Validation of Debt information. During the later phases of the lawsuit process, Beane stated or implied that she had not been able to validate the basic bona-fides of the HOA's claim, and so Williamson sent several subsequent redundant packages of Validation of Debt information, again out of an abundance of caution. A 2nd package was sent on 10/9/17. A 3rd package was sent on 10/24/17. A 4th package was sent on 11/2/17.

5.2 Allegations in Beane's Complaint. Beane alleges that Defendant Williamson committed several process errors during the later phases of the 6-month state collection lawsuit process, i.e.

---

Defendants' Motion for Dismissal - 10

violations of §1692(g) – Validation of Debt rule, and §1692(e)(11) - mini-miranda rule.  See Complaint § 10 & 11.

Beane alleges that "As a result of the aforementioned violations, Plaintiff suffered and continues to suffer injuries to Plaintiff's feelings, personal humiliation, embarrassment, mental anguish and severe emotional distress".  Complaint §13.

Beane seeks statutory damages (up to $1,000), plus her costs and attorney's fees.

5.3    <u>Allegations **Not** in Beane's Complaint</u>.  It should be noted that Beane's complaint does not allege – because she cannot allege – any factual circumstances that would demonstrate actual damages specifically occasioned by any of these alleged violations.

- No allegation about what harm she thinks she incurred as a direct result of the Validation of Debt process errors, let alone how such errors could harm her.

- No allegations that she was at any time confused about the precise nature and extent of the creditor's claim.

- No allegations that she did not receive full Validation of Debt information, let alone when she first received such information.

- No allegations about what harm she thinks she incurred as a direct result of the missing mini-miranda statement in one letter sent later in the process.

- No allegation that she was confused about the Defendant's role in the lawsuit or the adversarial nature of the whole process

- No allegations about the nature and extent of the awful mental injuries she claims to have suffered due to the process errors, let alone how such errors could harm her.

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

## VI.   RULE AND EVIDENCE RELIED UPON.

6.1   Standard on Motion to Dismiss.   Motions to dismiss for failure to state a justiciable claim under Rule 12(b)(6) are governed by the standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007).   While the federal pleading standard under Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 US. at 555). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting *Twombly*, 550 U.S. at 570). Thus, [i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they recite no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, then a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.   Id. at 679 (the "*Twombly* two-step").

6.2   Evidence.   The evidence relied upon is provided within the *Declaration of Robert Williamson* in support of this Motion, filed herein.

## VII.   ARGUMENT

7.1   Beane's 4 process error claims.   Beane's Complaint asserts that the Defendant made 4 separate errors (procedure violations) while obtaining the Judgment against Beane.   Each claim stands on its own for purposes of demonstrating standing, i.e. demonstrating an actual injury proximately caused by a particular alleged process error.

Defendants' Motion for Dismissal - 12

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

7.2    Beane's 1st Claim – Debt Validation Notice **form sent late** – fails, due to no actual harm.

Beane claims that the Debt Validation Notice form dated 10/9/17, sent to her during

month 4 of the process, sent to her 10-days after an "initial communication" letter was sent to her

(not to be confused with the months earlier initial contact), was sent too late. The rule prescribes

that such Notices should be sent within 5-days of the technical 'initial contact'. Admittedly a

process error, if the rules are taken literally and out of context.

Violations of the Validation of Debt rules cannot give rise to any harm where the

collector has preemptively provided, from the actual initial contact, full and detailed Validation

of Debt information. The purpose of the Validation of Debt provisions, at §1692(g), is to ensure

that the consumer is apprised of the circumstances of the debt and the basis of the creditor's

claim, to be able to 'validate' that the claim is not bogus or a case of mistaken identity. Where

the consumer receives full Validation of Debt information in advance, the purpose of the

disclosure rule is fully satisfied in advance. One could say that there is no longer any need for,

let alone a strict requirement for, the various mechanical procedural steps called for by the

Validation rule. There is no longer any potentially confused consumer who needs further

information. Whatever anxiety the consumer may experience during the process will have

nothing to do with her lack of getting the validating information.

In this case, Defendant Williamson's actual initial contact with Beane was to serve the

Complaint on her. The Complaint contained detailed explanations of each element of the HOA's

charges to Beane's homeowner's account. It even contained a detailed spreadsheet showing the

detailed charges and math involved, the best possible information to fully validate and verify the

claim elements. No debtor who receives this level of claim information can plausibly argue that

Defendants' Motion for Dismissal - 13

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

she was unable to 'validate' that the claim is not bogus or a case of mistaken identity.   In this case, Beane, who had been in a long-running battle with the HOA, knew, from the very beginning, precisely all of the elements of the HOA's claim, even if she disagreed about the merit of the claim.   She genuinely but unsuccessfully challenged the merits of the claim in court.

Beane's argument flies in the face of reason.   Here, it cannot be forgotten that prior to the point in time that she received this 2nd package of Validation of Debt information, Beane had already received full Validation of Debt information 4 months earlier.   If, like in this case, a 2nd package of validation information is sent 'late', no harm is possible.   By that time, the purpose of the rule had already been fully satisfied.

7.3   Beane's 2nd Claim – Debt Validation Notice, **no exact claim amount** – fails, due to no actual harm.

Beane claims that the Debt Validation Notice form dated 10/9/17 (the 2nd package of Validation of Debt information sent), sent to her during month 4 of the 6-month process, contained a description of the claim amount, at that point in time, of "Balance approximately $3,000".   She argues that an approximation description, no matter how accurate, is a violation of the rule that requires that a Notice state "the amount of the debt", meaning, she believes, a precise amount; presumably the initial charge amount, at least in cases of a single purchase transaction.   She seems to not understand just how easy it is to 'validate' a debt.

The purpose of the Debt Validation rule is to provide sufficient detail to the consumer so that the consumer can confirm that the claim is about a particular transaction made by the consumer, or multiple transactions.   As soon as the information provided is sufficient to enable the consumer to 'validate' that the claim is not a hoax or a case of mistaken identity, then the purpose of Validation of Debt requirements has been fulfilled.   In this case, Beane, who had been

Defendants' Motion for Dismissal - 14

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

in a long-running battle with the HOA, knew, from the very beginning, precisely all of the elements of the HOA's claim, and she could make her own mathematical calculations of following interest charges – the balance due, the amount of the debt, is always a moving target. It would be ludicrous to argue that the use of an approximation amount could possibly confuse or mislead Beane under these circumstances or result in a denial of her right to get detailed validation information.

Beane's argument flies in the face of reason.  Beane ignores the fact that she had already received a 1st full package of Validation of Debt information (within the 5/16/17 Complaint). Beane ignores the fact that she had already admitted (in her letter dated 9/30/17) that she clearly understood the nature and extent of the HOA's claim.  When she later 'discovers' a potential process error in the later Validation of Debt notice, she thinks that history should be erased and the whole FDCPA process should start anew.   Also, she later sent a 2nd debt dispute message (on 11/2/17), in an effort to yet again re-set the clock and interject further time delays in the process. Beane's actions, posing as a confused consumer to send debt validation dispute messages, sent after the purpose of the debt validation rules had been fulfilled, suggest an intentional effort to 'set the stage' for a subsequent technical process errors claim.

7.4     Beane's 3rd Claim – **Overshadowing** Notice of Debt – fails, due to no actual harm.

Beane argues that her letter to Defendant Williamson dated 9/30/17 constituted a proper debt validation dispute message, and that the HOA's Motion for Summary Judgment, filed 3 weeks later on 10/24/17, operated to 'overshadow' her right to request and receive full Validation of Debt information, as if she had not already received that information.

Defendants' Motion for Dismissal - 15

The Debt Validation *Dispute* concept, at §1692g(b), addresses the situation where a consumer has been contacted by a collector, and the consumer cannot yet identify the creditor or the claim as being her debt (rather that a bogus claim of a case of mistaken identity). The FDCPA goal is for consumers to be able to identify the claim early on, before collection steps escalate. In such a situation the consumer may submit a so-called Dispute of Debt Validation message to the collector, which would then trigger the collector's obligation to provide full Validation of Debt information to the consumer. No argument with this concept.

The *overshadowing* concept, at §1692g(b), addresses the same situation. After the collector receives from the consumer a proper Dispute of Debt Validation, then that collector is to stop taking any further collection actions until it provides full Validation of Debt information. If the collector jumps the gun (takes some action before sending the validating information), the potential harm to the consumer is that the subsequent action might operate to 'chill' or 'overshadow' the consumer's right to receive and assess Validation of Debt information. No argument with this concept.

Of course, once the consumer receives full Validation of Debt information, then the entire purpose of the Validation of Debt rules, including the don't overshadow rule, is fulfilled and satisfied. Beane ignores the fact that she had already received the 1st full package of Validation of Debt information (within the 5/16/17 Complaint & account spreadsheet). Beane ignores the fact that she had already admitted (in her letter dated 9/30/17) that she clearly understood – validated - the nature and extent of the HOA's claim. Beane ignores the fact that she had already received a 2nd redundant package of Validation of Debt information (Williamson's letter dated 11/2/17 with attachments). I can find no cases involving the 'overshadowing' concept that have yet addressed the effect of preemptively providing validation information before the alleged

Defendants' Motion for Dismissal - 16

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.   #205
Mill Creek, WA  98012-1294
(425) 743-0728

'overshadowing' conduct occurred, but if no harm is possible, it is difficult to imagine how a plaintiff could show actual harm.

In this case, where full Validation of Debt information was provided in advance, it is impossible to argue that any later actions could 'overshadow' her right – her right to receive validation information had already been fully satisfied. Every relevant detail of the claim had already been provided. Ironically, the very document (the Summary Judgment Motion) that she claims 'overshadowed' her right to receive validation information, was itself the 3rd package of debt validation information provided. The fact that Beane does not fully realize that she had already received more than sufficient information to validate the debt, for all FDCPA purposes, does not change anything.

7.5   Beane's 4th Claim – **Missing Mini-Miranda** – fails, due to no actual harm.

Beane argues that Williamson's letter dated 9/12/17, sent 4 months after the lawsuit was begun, which admittedly did not contain a 'mini-miranda' statement, constitutes a process error, which should automatically cause injury and enable her standing.

This is the same argument addressed and rejected in *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018). The Court in *Hagy* noted that "Nowhere in the Act (or for that matter the legislative record) does Congress explain why the absence of such a warning always creates an Article III injury. As we have said before and repeat here, "standing is not met simply because a statute creates a legal obligation," ... "and allows a private right of action for failing to fulfil this obligation," *Hagy*, at 622. Standing requires that an alleged injury in fact be shown by factual allegations to be both concrete and particularized. This same reasoning was followed in *Bassett v. ABM Parking Services*, 883 F.3d 776 (9th Cir. 2018). Hagy's Complaint was dismissed.

Defendants' Motion for Dismissal - 17

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

Here, the initial actual contact was the service on Beane of the original collection Complaint. Beane's receipt of the Complaint immediately (1) informed her who her creditor was (the HOA) and who Defendant Williamson was (HOA's lawyer named on each page), and (2) informed her that Defendant Williamson's purpose was to collect money from her, and (3) made quite clear that the context was an adversarial one. Beane had no confusion about any of this. Providing this sort of information exactly fulfills the purpose of the 'mini-miranda warning' message rule. Further, Beane's 1st action was her filing of her Answer which contained numerous defenses raised against the merits of the HOA's claim - she was fully engaged in an adversarial process.

Here, where the alleged process error occurred 4 months into the process and the consumer fully appreciated the collector's status and purpose, it is hard to imagine – no, it is impossible to imagine – that the technical omission could cause any confusion harm of the type the rule is intended to avoid. Beane has certainly not met her burden of establishing actual injury.

7.6    Beane Lacks the Requisite Standing. This is a case where it would be impossible for the consumer to argue that she had suffered the harm of not being told of her right to receive Validation information, because that fact had already been accomplished before the process errors occurred. The present case is the quintessential no-injury situation addressed by *Spokeo* and *Barrett* and *Hagy*. Beane is essentially arguing that the disclosure rules must be followed in all cases at the prescribed times, even if the information has already been provided. But no purpose is served by such a pedantic view.

Defendants' Motion for Dismissal - 18

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728

Here, Beane has not pled—because she cannot plead—any concrete, particularized injury, arising from any of her 4 process error claims. Beane sustained no actual injury, be it tangible, intangible, a risk of injury, or otherwise.  Beane's complaint contains none of the critically necessary factual allegations of harm or causation.  This case fails the *Spokeo* concreteness standard, and the case must be dismissed.

VIII.   CONCLUSION

RPW Legal Services respectfully requests that this Court dismiss Beane's Complaint with prejudice, because Beane lacks standing, having failed to plead any injury in fact with the requisite concreteness and particularity.  In the alternative. RPW Legal Services requests that this Court order Beane to specify the purported harms she alleges, beyond her conclusory claim that "As a result of the aforementioned violations, Plaintiff suffered and continues to suffer injuries to Plaintiff's feelings, personal humiliation, embarrassment, mental anguish and severe emotional distress".

Respectfully submitted this ___ day of March, 2019

RPW Legal Services, PLLC,  Defendant.

By: _____
Robert P. Williamson WSBA 6950

_____
Robert P. Williamson, Individually

Defendants' Motion for Dismissal - 19

Robert P. Williamson, PLLC
Bob@MillCreekLawyer.com
16300 Mill Creek Blvd.  #205
Mill Creek, WA  98012-1294
(425) 743-0728