HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY BEANE,

        Plaintiff,

v.

RPW LEGAL SERVICES, PLLC and
ROBERT P. WILLIAMSON,

        Defendants.

CASE NO. C18-704 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. # 12) and Defendants' Motion to Dismiss (Dkt. # 14). Both parties have responded to the others' motion, but neither has filed a reply. Dkt. ## 16, 17. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** both motions. Dkt. ## 12, 14.

## II. BACKGROUND

This case concerns Plaintiff Kimberly Beane's ("Plaintiff") contacts with Defendant Robert P. Williamson ("Defendant" or "Mr. Williamson"), who is an attorney and solo practitioner at his law firm, Defendant RPW Legal Services, PLLC. Dkt. # 15, ¶ 1. In 2017, Mr. Williamson was hired by the Marysville Estates Property Owners'

Association ("MEPOA") to collect unpaid dues from Plaintiff, a property owner in the MEPOA neighborhood in Tulalip, WA. *Id*. at ¶ 9, Ex. A.

On May 16, 2017, the MEPOA, through its attorney Mr. Williamson, filed suit against Plaintiff for monies due in Snohomish County District Court. *Id*., Ex. A. This lawsuit sought recovery in the amount of $2,180.37 in allegedly unpaid annual assessments from 2005 to June 2017, including interest and late charges. *Id*. at ¶¶ 2.4-2.7.

On September 12, 2017, Mr. Williamson sent Plaintiff a letter on his firm's letterhead, titled "Marysville Estates Property Owners' Association Assessment Collection," purportedly addressing "several objections to the Association's collection efforts." Dkt. # 15, Ex. B. Mr. Williamson's letter indicated that the unpaid assessments charges now totaled $902.09 (as the MEPOA could only collect dues for the past six years), but this total "will increase" as Mr. Williamson's actions in the case proceeded to summary judgment. *Id*. at 1-2. Mr. Williamson stated that if Plaintiff was interested in "discussing any payment amount, to settle the assessment and collection fess charges, please call me." *Id*. at 2.

On October 9, 2017 Mr. Williamson sent Plaintiff another letter, also titled "Marysville Estates Property Owners' Association Assessment Collection," purportedly responding to Plaintiff's request for "verification" of the assessments owed to MEPOA. Dkt. # 15, Ex. C. Mr. Williamson included with this letter copies of the annual invoices sent to Plaintiff from 2014 to 2017, and a copy of Plaintiff's account spreadsheet. *Id*. The last page of this communication included a "Debt Validation Notice," which stated that the "Balance" of the debt was "approximately $3,000." *Id.* at 7. The "Debt Validation Notice" also stated that Plaintiff would have thirty (30) days to dispute the validity of the debt, otherwise "the debt will be assumed to be valid by any attorney or debt collector engaged to assist with collection of the debt." *Id*. The footer of both the first and last pages of the letter included the following statement: "This letter,

communication, or notice pertains to collection of a debt, and any information provided herein or obtained from you will be used for that purpose. I am acting as an attorney or debt collector for the creditor." *Id*. at 1. This language was not present in the September 12, 2017 letter.

On October 24, 2017, Mr. Williamson, acting on behalf of MEPOA, filed a motion for summary judgment in the Snohomish County District Court case. Dkt. # 15, Ex. D at 2-8. This motion argued that Plaintiff's account balance as of November 2017 was $910.11, and requested summary relief in this amount and attorney's fees. *Id*. at ¶¶ 2.7, 5.3. The same day, Mr. Williamson sent Plaintiff another letter, which included the motion and supporting materials. *Id*. at 1. This letter contained the same "Collection" subject line and footer language as the previous communication. *Id*. This letter did not contain any other information on the exact amount of the debt or Plaintiff's ability to contest the debt.

On May 15, 2018, Plaintiff filed this suit against Defendants, alleging several violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Dkt. # 1. Defendants answered and asserted a counterclaim against Plaintiff for filing the lawsuit in bad faith in violation of 15 USC § 1692k(a)(3). Dkt. # 5. On October 4, 2018, Plaintiff served a series of Requests for Admissions on Defendants. Dkt. # 13, Ex. A. After receiving these Requests, Mr. Williamson served his responses, and made several admissions on behalf of both Defendants, including that for (1) Plaintiff is a consumer; (2) Defendants attempted to collect a debt; and (3) Defendants were debt collectors. Dkt. # 13, Ex. B.

On February 27, 2019, Plaintiff filed a Motion for Partial Summary Judgment on her FDCPA claims. Dkt. # 12. On March 12, 2019, Defendants countered with a Motion to Dismiss for Lack of Standing. Dkt. # 14. Both motions are now before this Court.

## III.  ANALYSIS

This action is premised in large part on alleged violations of the FDCPA. Congress enacted the FDCPA to counter the "abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004).  The FDCPA's restrictions on debt collectors run from the very broad (such as a prohibition on unfair or deceptive communication) to the very narrow (such as a prohibition on using post cards).  Courts must give the Act a liberal interpretation. *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006).  The validity of the alleged debt does not bear on FDCPA violation analysis. *Baker v. GC Serv. Corp.,* 677 F.2d 775, 777 (9th Cir. 1982).

Because the FDCPA is a strict liability statute, a debt collector's intent to deceive or mislead a consumer is irrelevant. *Clark,* 460 F.3d at 1175.  Courts apply the FDCPA using a "least sophisticated debtor" standard, which ensures that the "FDCPA protects all customers, the gullible as well as the shrewd … the ignorant, the unthinking, and the credulous." *Id.* at 1171.  "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id*. (quoting *Terran*, 109 F.3d at 1432). "Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless [their] interpretation of a collection notice cannot be bizarre or unreasonable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012).  The "least sophisticated consumer" standard presents a lower bar for a plaintiff to overcome than does the familiar "reasonable person" standard. *Terran v. Kaplan,* 109 F.3d 1428, 1431-32 (9th Cir. 1997).

Here, Plaintiff identifies three alleged violations of the FDCPA. Dkt. # 1 at ¶¶ 10-12; Dkt. # 12 at 6-7.  First, Plaintiff alleges that Defendants violated Section 1692e(11) by sending an initial communication to Plaintiff in an attempt to collect a debt without disclosing they were debt collectors. Dkt. # 1 at ¶ 11; Dkt. # 12 at 6.  Second, Plaintiff alleges that Defendants violated Section 1692g(a) by failing to timely provide a

validation notice of the debt and including "a balance statement that was uncertain." Dkt. # 1 at ¶ 10.[1]  Finally, Plaintiff claims that Defendants violated Section 1692g(b) by filing a motion for summary judgment for the debt in question within thirty (30) days of the Validation Notice, thereby "overshadowing" Plaintiff's right to contest the debt within this timeframe.  *Id*. at ¶ 12.  Defendants primarily argue, through their Motion to Dismiss, that Plaintiff has failed to allege the requisite injury-in-fact to have standing to bring these claims.  Dkt. # 14.

**A.  Defendants' Motion to Dismiss (Dkt. # 14)**

Defendants filed their Motion to Dismiss under Rule 12(b)(6), which permits a court to dismiss a pleading for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  Defendants' main argument is that under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff lacks standing to bring her FDCPA claims because she has not plead or articulated a cognizable injury.  Dkt. # 14.  Defendants observe that the only injury alleged in Plaintiff's Complaint is that because of the alleged FDCPA violations, Plaintiff suffered "injuries to Plaintiff's feelings, personal humiliation, embarrassment, mental anguish and severe emotional distress."  Dkt. # 1 at ¶¶ 13-14.  Accordingly, though Defendant's Motion is couched as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court can, and does, construe this as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) because the Motion only challenges Plaintiff's Article III standing.  *See, e.g., Park–Kim v. Daikin Indus.*, Ltd., No. CV 15–9523 CAS (KKx), 2016 WL 1069035, at *3 n.3 (C.D. Cal. Mar. 17, 2016) ("Although defendants' motion is styled as a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court construes defendants' challenge to plaintiff's Article III standing as arising under Rule 12(b)(1).").

---

[1] As noted below, this alleged violation is actually two separate violations of different requirements under Section 1692g(a).

ORDER- 5

To satisfy Article III's standing requirements, a plaintiff must show that he or she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000). Concreteness and particularization are two separate requirements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).

"A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (internal quotations omitted). In *Spokeo*, the case relied upon most heavily by Defendants, plaintiff alleged a violation of the Fair Credit Reporting Act ("FCRA"), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. *Id.* at 1545; 15 U.S.C. § 1681e(b). Robins discovered that defendant Spokeo, Inc. had a consumer profile on him that contained incorrect information, such as the facts that "he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree." *Spokeo*, 136 S. Ct. at 1546. The Ninth Circuit concluded that Robins established standing because he "allege[d] that Spokeo violated *his* statutory rights, not just the statutory rights of other people." *Id.* at 1548.

The Supreme Court remanded the case, reasoning that the Ninth Circuit considered only particularization, not concreteness. *Id.* at 1548-50. In reaching this conclusion, the Court noted that "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. The *Spokeo* Court clarified, though, that concrete is "not necessarily synonymous" with tangible. *Id.* at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). The Court explained that, in "determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* "Congress may 'elevat[e] to the status

of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578). Accordingly, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.

On remand, the Ninth Circuit concluded the plaintiff had standing. *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017). In reaching this conclusion, the Ninth Circuit adopted the following two-part test to determine whether a plaintiff alleging a statutory violation has sufficiently established a concrete injury: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* at 1113. For the first prong, the Ninth Circuit emphasized that "congressional judgment still plays an important role in the concreteness inquiry" and that "Congress's judgment as to what amounts to a real, concrete injury is instructive." *Id.* at 1112. For the second prong, the court held that *Spokeo* "requires some examination of the nature of the specific alleged [violation] to ensure that [it] raise[s] a real risk of harm to the concrete interests that [the statutory scheme] protects." *Id.* at 1116.

This Court recognizes that *Spokeo* and *Robins* did not explicitly address FDCPA claims, and neither party presents much in the way of in-Circuit authority addressing post-*Spokeo* FDCPA standing issues. Defendants cite a number of out-of-circuit authorities, but largely fail to explain how they control this Court's determination of the

FDCPA standing issue here.[2] Plaintiff cites a number of authorities addressing "materiality" in the FDCPA context, but cites few authorities directly addressing the standing issue. Dkt. # 17 at 2-5.

This forces the Court to undertake its own analysis. As for Plaintiff's first claim, under Section 1692e(11) of the FDCPA, consumers have an affirmative right to receive certain types of information—including a warning that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," *see* 15 U.S.C. § 1692e(11)—when a debt collector makes its initial communication. The Ninth Circuit has stated the "remedial purpose" of these disclosure requirements is to augment "consumers' ability to chart a course of action in response to a collection effort." *Davis v. Hollins Law*, 832 F.3d 962, 963 (9th Cir. 2016). Thus, the disclosure requirement embodied in 15 U.S.C. § 1692e(11) protects concrete interests, and is not the type of purely procedural rights envisioned by the *Spokeo* court. *See also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)) ("The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection

---

[2] Defendants provide analysis on only one case, *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018), where a plaintiff asserting a claim under 15 U.S.C. § 1692e(11) was found to lack standing. Dkt. # 14 at 4-5. This case presented unique circumstances that are not replicated here. In *Hagy*, the communication from the debt collector, which failed to provide the required FDCPA disclosures, "indicated that the Hagys would not have to pay the balance on their loan and that the lender would not pursue any other remedies against the Hagys." *Hagy*, 882 F.3d at 618. Given these unique facts, the Sixth Circuit concluded the disclosure violation didn't create any actual harm or material risk of harm to the plaintiffs. *Id.* at 621-22. Here, however, the letters sent to Plaintiff from Defendant indicated that Defendants were attempting to collect a debt because, among other indications, they requested monies due and explicitly referred to the "collections" of unpaid assessments. Accordingly, "the disclosure violation created a risk of harm" by depriving Plaintiff of the information that Defendants were debt collectors attempting to collect debts.

abuses.'"); *Watkins v. Inv. Retrievers, Inc.*, 2018 WL 558833, *3 (E.D. Cal. 2018) (holding that 15 U.S.C. § 1692e "do[es] not merely impose procedural requirements upon debt collectors, but instead 'create[s] a private duty owed personally to' a consumer by a debt collector to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt").

Judge Coughenour recently addressed this issue in *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15-1012-JCC, 2016 WL 4765839, at *6-8 (W.D. Wash. Sept. 13, 2016). In *Linehan*, Judge Coughenour recognized that courts across the country "have considered whether a violation of the FDCPA itself confers standing on a plaintiff," and noted that those courts "have answered that question in the affirmative." *Linehan*, 2016 WL 4765839, at *7-8. Specifically, Judge Coughenour cited approvingly to a number of cases, such as *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016), that held that alleging violations of Section 1692e is sufficient to confer standing because the consumer "did not receive information to which she alleges she was entitled." *Id*. Judge Coughenour found the approach of these cases "persuasive and sound," and therefore adopted the approach and held that the alleged FDCPA violation articulated a concrete harm sufficient to confer standing. *Id*. at *8 ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."). Other cases within the Ninth Circuit have also held that allegations of "informational violations" of the FDCPA under Section 1692e are sufficient to satisfy standing, even absent allegations of additional harm. *See, e.g.*, *Watkins v. Inv. Retrievers, Inc.*, 217CV01348KJMCKD, 2018 WL 558833, at *3 (E.D. Cal. Jan. 24, 2018) (holding that plaintiff need not "allege any harm that could exist independent of the [FDCPA]" to obtain standing for Section 1692e claims); *Arellano v. Virtuoso Sourcing Grp.*, LLC, 17-CV-00681-H-WVG, 2017 WL 3993959, at *3 (S.D. Cal. Sept. 11, 2017) ("In sum, by alleging that Defendant failed to accurately report Plaintiff's debt as disputed in violation of § 1692e(8), Plaintiff has

alleged a concrete injury sufficient to confer Article III standing."); *Byrne v. Oregon One, Inc.*, 3:16-CV-01910-SB, 2017 WL 3568412, at *8 (D. Or. July 18, 2017), *report and recommendation adopted*, 3:16-CV-01910-SB, 2017 WL 3568398 (D. Or. Aug. 16, 2017) ("Consistent with this long line of post-*Spokeo* cases, the Court finds that the alleged FDCPA violations at issue here are the type of informational violations that establish a concrete injury sufficient to satisfy the standing elements, even absent additional allegations of harm.").

This Court will follow Judge Coughenour and these other authorities with respect to Plaintiff's Section 1692e(11) claim. In sending an initial communication to Plaintiff without disclosing that Defendants were acting as debt collectors, Defendants deprived Plaintiff of this statutorily-mandated information, creating a risk that any information she provided might be used against her. *See, e.g., Driesen v. RSI Enterprises Inc.*, CV-18-08140-PCT-DWL, 2019 WL 283646, at *3 (D. Ariz. Jan. 22, 2019) ("RSI's violation of 15 U.S.C. § 1692e(11)—again, its failure to affirmatively inform Driesen that it was attempting to collect a debt and that any information she provided could be used against her—created a risk that Driesen might volunteer information to her detriment during subsequent interactions with RSI."). In denying Plaintiff this information in the initial communication, Defendants deprived Plaintiff of the ability to use this information to chart a course of action in the purported collection effort. Based on *Linehan* and the cited authorities, this "informational" harm suffices to present a cognizable injury for standing purposes.

The analysis proceeds in a different fashion with respect to Plaintiff's Section 1692g claims. In *Perry v. Columbia Recovery Grp., Inc.*, No. C16-0191JLR, 2016 WL 6094821 (W.D. Wash. Oct. 19, 2016), a decision entered shortly after *Linehan*, Judge Robart addressed the post-*Spokeo* standing issue as it applied to alleged violations under Section 1692g. In *Perry*, the plaintiff alleged that the defendant debt collector violated Section 1692g because their disclosure stated that any written dispute must be received

within thirty days, whereas the FDCPA allows the consumer to initiate or send the dispute within thirty days. *Perry*, 2016 WL 6094821, at *1-2. Judge Robart found that the plaintiff lacked standing because the plaintiff's claim constituted a "bare procedural violation" that did not amount to a concrete injury. *Id*. at *6. In so holding, Judge Robart rejected the idea that an alleged "violation of the FDCPA's disclosure requirements alone is an intangible harm sufficient to confer Article III standing." *Id*. at *7. Judge Robart dismissed the Section 1692g claims, noting that the plaintiff only alleged a bare procedural violation of Section 1692g, and did not allege that he ever attempted to or intended to dispute the debt, or that the defendant failed to provide any of the statutorily required information in response to a written dispute or request. *Id*. at *6.[3]

The Court finds that for the most part, the Section 1692g violations alleged in Plaintiff's Complaint are closer to the "bare procedural" Section 1692g violations of *Perry* than the concrete "informational" violations of Section 1692e. Plaintiff largely fails to allege any cognizable harm for these violations, and Plaintiff's vague allegation in the Complaint that she suffered "injuries to Plaintiff's feelings, personal humiliation, embarrassment, mental anguish and severe emotional distress" is not expanded upon or supported by evidence in the record. Dkt. # 1 at ¶¶ 13-14. As mentioned above, there are two Section 1692g allegations in Plaintiff's Complaint: (1) that "the 1692g(a) letter was sent more than 5 days after initial communication and included a balance statement that was uncertain," and (2) the "Motion for Summary Judgment overshadowed 1692g(a) disclosures (15 USC § 1692g(b))." Dkt. # 1 at ¶¶ 10, 12. In essence, however, there are three alleged violations, because the Section 1692(a) claim is thus comprised of violations of two separate requirements of Section 1692g(a): the "timeliness" portion and the "amount" portion. *Id.*

---

[3] While this case may seem, at first glance, to contradict Judge Coughenour's ruling in *Linehan*, Judge Robart explicitly limited this ruling to "the facts alleged in [*Perry*] and the disclosure requirements of Section 1692g of the FDCPA." *Id.* at *8, n.4.

ORDER- 11

The Court finds that the "timeliness" portion of the Section 1692g(a) claim fails due to a lack of cognizable harm. Section 1692g(a) generally provides that "in either the initial communication with a consumer in connection with the collection of a debt or another written notice sent within five days of the first, a debt collector must provide specific information to the consumer." *Dolan v. Sentry Credit, Inc.*, C17-1632 RAJ, 2018 WL 6604212, at *8 (W.D. Wash. Dec. 17, 2018) (citing *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320-31 (7th Cir. 2016)). While it is true that the "1692g(a) letter," ostensibly referring to the October 9, 2017 communication which included the Validation Notice, arrived more than five days after the September 12, 2017 letter, it is not apparent from the Complaint or record what harm this delay caused. The purpose of the validation notice requirement in 15 U.S.C. § 1692g(a) "is to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Perry*, 2016 WL 6094821 at *8 (quoting S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). These interests do not seem to have been impacted by the three-week delay. Plaintiff fails to argue what she would have done differently if such a notice was provided within five days as opposed to three weeks, or what informational rights were frustrated as a result of the delay. Based on the current record as it stands, this alleged "timeliness" violation did not seem to have any impact on Plaintiff's right or ability to understand or contest the debt.

The alleged harm connected to the "overshadowing" allegation of Plaintiff's Section 1692g(b) claim is equally specious. Where Section 1692g(a) provides consumers with rights to contest the debt within thirty days of the validation notice, Section 1692g(b) prohibits actions which "overshadow" or are "inconsistent" with the disclosure of the consumer's right to dispute to dispute the debt or request the name of the original creditor. 15 U.S.C. § 1692g(b). The only injury Plaintiff alleges here is that by filing a summary judgment motion within the thirty-day timeframe after the Validation Notice

was sent, Defendants deprived Plaintiff of the "time to digest the documents provided and make a decision whether to, for instance, make a settlement offer on the debt rather than undergo the stress of dealing with a summary judgment motion in court." Dkt. # 17 at 7. It is again unclear to this Court what this alleged harm refers to, and Plaintiff presents no legal authority that would suggest this type of injury is cognizable. At that point Plaintiff had already been in settlement discussions with Defendants, having offered (and been rejected) an amount of $600. Dkt. # 13, Ex. D. There is also little in the record indicating what the "stress of dealing with a summary judgment motion" was, and whether such an injury is recognizable under the FDCPA. This claim, like the "timeliness" portion of the Section 1692g(a) claim, appears not to have prejudiced Plaintiff's informational rights or ability to contest the debt in any way this Court can identify.

On the other hand, the Court does find that Plaintiff has articulated a cognizable injury for the Section 1692g(a) claim involving an "uncertain" balance statement. The harm articulated by Plaintiff is that Defendants' communications did not consistently state the precise amount of debt to be collected and did not adequately inform her of her rights to contest the debt. Dkt. # 17 at 5-7. The Court agrees that Defendants' failure to provide the amount of the debt likely prejudiced Plaintiff's ability to make an intelligent decision on whether to settle the debt, and for what amount. Dkt. # 17 at 6-7. The record is clear that the amount of the alleged debt on each of Defendants' letters was inconsistent, and the only labeled "Validation Notice" Defendants sent Plaintiff stated that the amount of the debt was "approximately $3,000." Dkt. # 13, Ex. D, at 2. Defendants also apparently did not respond to Plaintiff's request to clarify this amount, further exacerbating the confusion. Dkt. # 18, Ex. A. Defendant's argument that there was "no actual harm" because Plaintiff had already received multiple "validation" packages ignores the fact that the amount of the alleged debt varied dramatically between the packages, between $900 and "approximately" $3,000. *Id*. at 15-17. Given this

inconsistency, Plaintiff would be right to be confused about the true amount of her debt, and her ability to argue whether the debt had, for instance, was invalid or already paid in full or in part was negatively impacted. It is difficult to see how Plaintiff could properly calculate a payoff amount for this debt if she did not know what the exact amount of the debt was, or how it may increase or otherwise change. This suffices to take this alleged violation out of the realm of the "purely procedural" violations *Spokeo* and *Perry* cautioned against. The FDCPA, at the very least, affords the least sophisticated consumers the right to know the amount of the debt sought to be collected, akin to the "informational" rights under Section 1692e. 15 U.S.C. § 1692g(a). Defendants' inconsistent and imprecise statement of the amount of the debt frustrated this right, and this suffices to create a cognizable injury under the FDCPA.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss. Dkt. # 14. The Court **GRANTS** Defendants' Motion as to Plaintiff's Section 1692g(b) claim and the "timeliness" portion of the Section 1692(a) claim. The Court **DISMISSES** these claims without prejudice. The Court **DENIES** Defendants' Motion as to Plaintiff's Section 1692e(11) claim and the "amount" portion of the Section 1692g(a) claim.

**B.    Plaintiff's Motion for Partial Summary Judgment (Dkt. # 12)**

Plaintiff has moved for summary judgment on all of her FDCPA claims, and the Court will address Plaintiff's Motion on the two claims that remain. On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must first show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden shifts to the opposing party to show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

As to Plaintiff's Motion, Defendants offer very little resistance on the merits. The only argument contained in Defendants' three-page Response is that the FDCPA does not apply because Defendants are not "debt collectors" as defined by the FDCPA. Dkt. # 16 at 2. The Court rejects this argument. Plaintiff has established that she properly served Requests for Admissions under Rule 36 on Defendants. Dkt. # 13, Ex. A. After receiving these Requests, Mr. Williamson made several admissions on behalf of both Defendants. Dkt. # 13, Ex. B. Defendants admitted that Plaintiff is a "consumer" within the meaning of the FDCPA, and that they are each a "debt collector" within the meaning of the FDCPA. *Id.* Defendants also admitted that they were attempting to collect a "debt" within the meaning of the FDCPA. *Id.* Rule 36(b) states that "[a] matter admitted under this rule is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b) (emphasis added). Here, Defendants have filed no motion asking the Court to withdraw its admission, so the matters in Plaintiff's Requests for Admission are deemed conclusively established. *Id.* Defendants bizarrely and summarily state that Mr. Williamson "hereby revokes" his admission that Defendants were debt collectors within the meaning of the FDCPA, but provide no legal authority that would allow them to take such an action in a response to a motion for summary judgment. Dkt. # 16 at 2.

Accordingly, based on the current record and Defendants' admissions, the Court finds that the FDCPA is applicable to Defendants' actions in this case. The Court also agrees with Plaintiff that the record establishes Defendants' liability under the FDCPA. First, the record establishes that Defendants, acting as debt collectors under the FDCPA, violated Section 1692e. Under 15 U.S.C. § 1692e, debt collectors are prohibited from employing "false, deceptive, or misleading representations or means in connection with

the collection of any debt." In this circuit, a debt collector's liability under Section 1692e of the FDCPA is an issue of law. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (citing *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). A debt collector violates Section 1692e when it "frustrate[s] a debtor's ability to intelligently choose an appropriate response to a collection effort." *Davis v. Hollins Law*, 832 F.3d 962, 964 (9th Cir. 2016).

In addition to the general prohibition on "false, deceptive, or misleading representations," the statute includes a non-exhaustive list of prohibited practices. *Davis*, 832 F.3d at 963-64. One of these prohibited practices is the "failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11). The Ninth Circuit has held that "the phrase 'initial communication' refers to the first communication sent by any debt collector, including collectors that contact the debtor after another collector already did." *Hernandez v. Williams*, 829 F.3d 1068, 1070 (9th Cir. 2016). The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

Based on the current record, the Court finds that the September 2017 letter from Defendants to Plaintiff, ostensibly for the "Collection" of the unpaid assessment debt, was the "initial communication" under the meaning of the FDCPA. Accordingly, Defendants' "initial communication" with Plaintiff did not disclose that it was a

communication from a debt collector, as the subsequent letters did.  This failure violates Section 1692e(11).[4]

As to Plaintiff's remaining Section 1692g claim, Section 1692g(a) states that the validation notice of the debt must contain: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g(a).

---

[4] Although Mr. Williamson suggests that the original May 2017 summons and complaint in the state court action served as the "initial communication" for FDCPA purposes, the Court is skeptical.  Dkt. # 14, 13-14; Dkt. # 15, ¶ 2.  First, although the Ninth Circuit has not directly spoken on this issue, this Court notes that Congress has provided that summons and complaints "shall not be treated as an initial communication" for purposes of Section 1692g(a).  15 U.S.C. § 1692g(d).  This indicates that Congress did not intend to treat state court complaints as initial communications.  Although this subsection does not specifically apply itself to Section 1692e(11), the Court sees little reason to believe that this construction would not apply elsewhere in the act, especially because Section 1692e(11) explicitly provides that it "shall not apply to a formal pleading made in connection with a legal action."  15 U.S.C. § 1692e(11); *see also Fimbres v. Casebolt, Germaine & Schenk, PLC*, 2:06-CV-2402-HRH, 2006 WL 8440295, at *4 (D. Ariz. Nov. 21, 2006) (holding that "a summons and complaint are not an initial communication for purposes of the FDCPA").  Second, even if this Court treated the summons and complaint as an "initial communication," it would not change the result, as the summons and complaint also did not contain the requisite disclosure under Section 1692e(11) that it was a communication from a debt collector.  The first time Defendants identified themselves as the "debt collectors" they now admit to being was the October 9, 2017 letter and Validation Notice.

Here, there is little dispute that Defendants' October 2017 "Validation Notice" did not properly state the amount of the debt—instead, it said the amount was "approximately $3,000," a figure that was apparently more than double what Defendants previous communications indicated. Defendants provided little explanation for why this imprecise figure was given and why it differed so greatly from the other stated estimates of the debt, which all hovered around $900. The Court thus finds that Defendants have violated 15 U.S.C. § 1692g(a) by not properly stating the "amount" of the debt in the Validation Notice.

Accordingly, the Court **GRANTS** Plaintiff's Motion as to her Section 1692e(11) claim and her Section 1692g(a) claim concerning the "amount" of the debt. The Court otherwise **DENIES** Plaintiff's Motion.

## II. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** both parties' motions. Dkt. ## 12, 14.

Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's Section 1692g(b) claim and the "timeliness" portion of the Section 1692g(a) claim, but is otherwise **DENIED**. Dkt. # 14. These claims are **DISMISSED** without prejudice.

Plaintiff's Partial Motion for Summary Judgment is **GRANTED** as to Plaintiff's Section 1692e(11) claim and the remaining Section 1692g(a) claim, but is otherwise **DENIED**. Defendants' liability on these claims is established, and the amount of damages shall be determined at trial.

Dated this 6th day of May, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER- 18